UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KARL WAYNE ALLEN | CIVIL ACTION |
| VERSUS | NO. 14-227-JWD-RLB |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1)(C), you have **14 days** after being served with the attached Report and Recommendation to file written objections to the Magistrate's proposed findings of fact, conclusions of law and recommendations. Absent plain error, any failure to file written objections within 14 days of service will bar you from attacking on appeal the proposed factual findings, legal conclusions and recommendations that were not objected to and accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on July 20, 2015.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| KARL WAYNE ALLEN | CIVIL ACTION |
|---|---|
| VERSUS | NO. 14-227-JWD-RLB |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Karl Wayne Allen (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act." (Tr. 114-20).[1] For the reasons given below, the Court recommends that the Commissioner's decision be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this Report and Recommendation.

I. **PROCEDURAL HISTORY**

On July 18, 2012, Plaintiff filed an application for benefits alleging a disability onset date of January 4, 2012. (Tr. 114). The claim was initially denied (Tr. 45-48) and Plaintiff filed a timely request for a hearing that was held on April 30, 2013. (Tr. 25-44). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 29-41). Leonard Francois, a Vocational Expert (VE), also provided testimony. (Tr. 41-43).

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). References to the record of administrative proceedings filed in this case are designated by: (Tr. [page number(s)]).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on May 24, 2013. (Tr. 11-20). The ALJ found that Plaintiff had not been under a disability from the alleged onset date of January 4, 2012 through May 24, 2013, the date of the decision. (Tr. 20). Plaintiff's request for review was denied by the Appeals Council on February 21. 2014. (Tr. 1-5). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to

resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic

work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ issued an unfavorable decision on May 24, 2013, based on the evidence contained in the administrative record. (Tr. 11-20). Specifically, the ALJ found:

1. Plaintiff met the insured status requirements of the Act through December 31, 2016.

2. Plaintiff had not engaged in substantial gainful activity since the January 4, 2012 alleged onset date.

3. Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, cervical spondylosis, major depressive disorder, psychotic disorder, and schizophreniform disorder.

4. Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the Listings, specifically Listing 1.04 (Disorders of the Spine), Listing 12.03 (Schizophrenic, Paranoid or Other Psychotic Disorders) and Listing 12.04 (Affective Disorders).

5. Plaintiff had the residual functional capacity to perform medium work. However, Plaintiff could only understand, remember and carry out simple instructions; use judgment in making work-related decisions; respond appropriately to supervisors, coworkers, and work situations; and deal with changes in a routine work setting.

6. Plaintiff could no longer perform any past relevant work.

7. Plaintiff was an individual of advanced age (age 55 or older).

8. Plaintiff had a high school education and was able to communicate in English.

9. Application of the GRIDS meant the transferability of job skills was not material to the ultimate issue of disability.

10. Considering Plaintiff's age, education, work experience and RFC, Rule 203.15 of the GRIDS directed a finding of not disabled as there were jobs existing in the national economy that Plaintiff could perform.

(Tr. 13-20).

## IV. DISCUSSION

### A. Appeals Council

Plaintiff argues that "significant evidence that was both 'new' and 'material' was forwarded to the Appeals Council with the request for review but, contrary to unambiguous Agency policy, the Council failed to explain why that evidence was not material, requiring remand for reconsideration." (R. Doc. 12 at 16). In its Order denying review, the Appeals Council's explained that it "considered" Plaintiff's additional evidence but found the evidence did "not provide a basis for changing the [ALJ's] decision." (Tr. 1-2). According to Plaintiff, this explanation was "conclusory" and "plainly inadequate," . . . requiring remand." (R. Doc. 12 at 16).

If a claimant is "dissatisfied" with an ALJ's decision, he or she "may request" review by the Appeals Council. 20 C.F.R. § 404.967. When a claimant requests review, the Appeals Council "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to [the ALJ]." *Id.* The regulations specifically permit claimants to submit additional evidence, not before the ALJ, to the Appeals Council to consider along with the request for review. 20 C.F.R. §§ 404.968(a), 404.970(b). In those cases, the Appeals Council

first determines if the submission is "new and material" evidence that "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b). For purposes of this appeal, the Court assumes Plaintiff's additional evidence submitted to the Appeal's Council constitutes new and material evidence. (Tr. 4, 795-859).

When confronted with new and material evidence, the Appeals Council then "evaluate[s] the entire record including the new and material evidence." 20 C.F.R. § 404.970(b). If the Appeals Council finds that the ALJ's conclusion is contrary to the weight of the current record evidence, it will grant the request for review and either issue a decision or remand the case to the ALJ. 20 C.F.R. §§ 404.967(b), 404.979. But if the weight of the evidence in the current record is still consistent with the ALJ's decision, the Appeals Council can simply deny the request for review.

Contrary to Plaintiff's contention, nothing in the Act or regulations requires that the Appeals Council explain its rationale for denying review. Instead, the Act does not require the Appeals Council to do anything more than what it did here — state that it considered new and material evidence in deciding whether to grant review. The Appeals Council's Order and Exhibit List specifically reference the newly submitted evidence. (Tr. 4, 5, 795-859). The decision of the Appeals Council stated: "[W]e considered . . . the additional evidence listed on the enclosed Order of Appeals Council. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2). Nothing more is required. *See Cantrell v. McMahon*, 227 F. App'x 321, 323 (5th Cir. 2007) (Appeals Council adequately considered newly submitted evidence where "In its order, the Appeals Council specifically stated it had considered the additional evidence and found it did not warrant changing the ALJ's disability decision."); *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir.

2006) (finding "nothing in the statutes or regulations" requires the Appeals Council to explain its evaluation when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting argument that Appeals Council must "make its own finding" and "articulate its own assessment" of new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988-89 (7th Cir. 1991) ("Since the . . . regulations do not require an explanation of the grounds for rejection, we hold that the Appeals Council may deny review without articulating its reasoning," even when new and material evidence is submitted.).

Although the additional evidence (Tr. 795-859) did not warrant relief by the Appeals Council, it was made part of the record. (Tr. 5). And so, the Court must consider it, along with the record before the ALJ, when determining whether substantial evidence supports the final decision of the Commissioner. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

### B. Consideration of Opinion Evidence and Residual Functional Capacity

The ALJ is responsible for determining a claimant's residual functional capacity (RFC). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the claimant's ability, despite any physical and mental limitations. *Loza*, 219 F.3d at 393 ("The inquiry here is whether the record, read as a whole, yields such evidence . . . ."). However, the ALJ may not establish physical limitations or lack of limitations without the support of medical evidence. *Patterson v. Astrue*, No. 08-13, 2008 WL 5104746, at *4 (N.D. Miss. Dec. 1, 2008). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F .3d 31, 35

(1st Cir. 1999) (citation omitted). Ultimately, the ALJ must "consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393.

The ALJ determined that Plaintiff was capable of performing the exertional demands of medium work; however, due to nonexertional limitations imposed by his mental impairments, he could "only understand, remember and carry out simple instructions; use judgment in making work-related decisions; respond appropriately to supervisors, coworkers, and work situations; and deal with changes in a routine work setting." (Tr. 16-17). Even still, the ALJ later explained that these nonexertional limitations did not significantly erode the occupational base for unskilled sedentary work, as application of the GRIDS remained appropriate. (Tr. 19-20). According to the regulations, medium work involves:

> [L]ifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting . . . . [S]itting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects . . . .
>
> [M]edium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) . . . .
>
> In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983); *see also* 20 C.F.R. § 404.1567(c) (defining medium work).

The ALJ's evaluation of Plaintiff's RFC begins with a review of Plaintiff's medical records. First, the ALJ acknowledged his "heav[y]" reliance on the "opinions of the state agency

medical consultants, Charles Lee, M.D., and Nicholas Pinilla, M.D." (Tr. 17). Dr. Charles Lee found Plaintiff had the RFC to perform medium work after reviewing the medical files in the record as of September 6, 2012. (Tr. 50-56, 313). On September 27, 2012, Dr. Nicholas Pinilla reviewed the "same evidence" before Dr. Lee and agreed with Dr. Lee's medium RFC finding. (Tr. 17, 315). The ALJ gave significant weight to these opinions because they were "consistent with the evidence prior to their review [on September 6, 2012] . . . and also subsequent evidence that he was independent in mobility in January 2013." (Tr. 17).

The ALJ then gave little weight to the opinion of VA physician, Dr. Camalyn Gaines, who found Plaintiff "medically disabled" on September 18, 2012. (Tr. 17, 566). According to the ALJ, "this conclusory opinion concerns an issue reserved to the Commissioner." (Tr. 17). Without citing to any evidence, the ALJ further explained that Dr. Gaines' opinion was "not supported by the record as a whole." (Tr. 17).

The opinion of Plaintiff's treating physician, Dr. Toan Hau, was likewise "accorded little weight." (Tr. 18). The ALJ summarized Dr. Hau's June 20, 2012 opinion that Plaintiff's mental impairments caused "marked limitations in social functioning, concentration, persistence, or pace, and episodes of decompensation." (Tr. 18, 304). The opinion was given little weight because (1) Dr. Hau's assessment did not define the term "'marked' episodes of decompensation"; (2) the evidence only showed one episode of decompensation; and (3) the marked limitations assessed by Dr. Hau "may [have] be[en] consistent" with Plaintiff's functioning during his May 24 – June 5, 2012 hospitalization, but they were "not consistent with the ample evidence of subsequent improvement." (Tr. 18, 213, 269). More specifically, while the ALJ acknowledged that Plaintiff "continues to be evaluated for suicide risk," the fact that he was not "overtly psychotic" or experiencing suicidal ideation on June 7, 2012, and was found to

not be at risk for suicide on August 7, 2012 provided "ample evidence of subsequent improvement." (Tr. 18, 222, 238, 255).

The ALJ similarly found that "Dr. Han's [sic] opinion dated April 2, 2013, also exceed[ed] the objective evidence concerning the claimant's physical capabilities." (Tr. 18, 791-94). On April 2, 2013, Dr. Hau submitted a medical source statement finding that Plaintiff could lift objects weighing less than 10 pounds; stand or walk for 30 minutes at a time for up to 4 hours; and occasionally twist, stoop, crouch, climb stairs and climb ladders. (Tr. 791-94). Dr. Hau also explained that Plaintiff's carpal tunnel syndrome caused numbness in his hands and that it, along with his other impairments, would affect his ability to reach, handle, finger, feel, push and pull. (Tr. 793). In evaluating this opinion, the ALJ simply explained: "Again, this opinion is not substantiated by the objective evidence, including the substantial nurse's notes in May and June 2012, and January 2013, that the claimant had no mobility limitations." (Tr. 18).

After reviewing the medical evidence, the ALJ explained the RFC assessment. The ALJ found Plaintiff's "physical condition would be consistent with the full range of medium work, due to spinal degeneration as documented by MRI, and that he would be limited to the completion of simple tasks due to his history of psychosis, with ongoing treatment with the medications risperidone and sertraline." (Tr. 18).

Plaintiff argues the ALJ "erred as a matter of law when he failed to properly analyze the assessment of Mr. Allen's treating physician, [Dr. Hau,] whose opinion contradicts the ALJ's conclusion that the claimant can perform 'medium work.'" (R. Doc. 12 at 5). Plaintiff takes the position that Dr. Hau's opinion of both his physical and mental limitations are consistent with the underlying evidence of record. (R. Doc. 12 at 7-10). Plaintiff additionally suggests that the ALJ's

reliance of the opinions of non-examining state agency physicians, Dr. Charles Lee and Dr. Nicholas Pinilla, was legally erroneous.

Here, the ALJ determined that Dr. Hau's physical assessment, particularly that Plaintiff was limited to 4 hours of walking per day, was contradicted by the "substantial nurse's notes in May and June 2012 and January 2013, that the claimant had no mobility limitations." (Tr. 18). The evidence relied on by the ALJ consists of daily hospital records from Plaintiff's in-patient psychiatric treatment from May 24, 2012 through June 5, 2012 (Tr. 338-39, 346-47, 358-59, 371, 380, 400, 406, 412-13, 418), and a notation made in Plaintiff's medical records on January 14, 2013. (Tr. 511). The overwhelming majority of this evidence only covers a 12-day period in mid-2012, occurring almost a year before Dr. Hau provided his April 2, 2013 assessment of Plaintiff's physical limitations. (Tr. 338-39, 346-47, 358-59, 371, 380, 400, 406, 412-13, 418). The ALJ likewise adopted the opinion of non-examining state agency physicians, Dr. Lee and Dr. Pinilla, both of whom were only able to review the evidence contained in the record as of September 2012 – almost a year before the ALJ rendered his opinion. In fact, throughout the decision, the ALJ does not mention any evidence that post-dates the January 14, 2013 record that indicated Plaintiff was independent in mobility. (Tr. 13-19).

The limited scope and temporal remoteness of the evidence relied on by the ALJ casts doubt on the RFC assessment and the weight given to the various medical opinions. Subsequent medical records ignored by the ALJ indicate a worsening in Plaintiff's physical conditions by 2013. These records are consistent with the opinion of Plaintiff's treating physician. As early as May 31, 2012, Plaintiff exhibited limited range of motion and slightly limited mobility. (Tr. 368). Decreased range of motion was again found on June 1, 2012 and Plaintiff demonstrated slightly limited mobility on June 2, 2012. (Tr. 353, 363). On September 7, 2012 and September

18, 2012, Plaintiff's treating physicians rated him as a high fall risk and noted his use of a cane to assist with mobility. (Tr. 566-67, 568-69).[2] Plaintiff exhibited decreased range of motion in all planes of his cervical spine on September 18, 2012. (Tr. 566-67). Treatment records from September 28, 2012 report: "Lumbar ROM is limited in all directions with pain reproduced with flexion." (Tr. 561). On October 18, 2012, Plaintiff received a "provisional diagnosis" of "abnormality of gait" and was "issued a straight cane" to alleviate pain in his hand caused by the curved grip of his current cane. (Tr. 498, 558). This evidence is clearly inconsistent with the "frequent bending-stooping (. . . bending the spine at the waist)" and "[f]lexibility of the . . . torso" required to perform medium work. SSR 83-10, 1983 WL 31251, at *6.

As the ALJ points out, Plaintiff was reported as being independent in mobility on January 14, 2013 by licensed practical nurse, Patricia Fields. (Tr. 511). However on that same day, Patricia Fields also assessed Plaintiff as a high fall risk. (Tr. 511). Plaintiff's April 18, 2013 treatment records document that Plaintiff had a "history of falls," used of an ambulatory aid, and continued to be rated as a high fall risk. (Tr. 849). Treatment records from May 6, 2013 note an increase in Plaintiff's back pain over the last one and a half years and report that Plaintiff has experienced "bladder incontinence: pt does wet his bed for x 8 months." (Tr. 835).[3] Plaintiff was again assessed as a high fall risk on May 6, 2013; he also exhibited abnormal gait, pain on flexion and extension and pain with lumbar facet loading. (Tr. 837, 841). Plaintiff's doctors also reported that he was "able to ambulate from [the] clinic with a cane." (Tr. 834). On May 17, 2013, doctors reassessed Plaintiff as a high fall risk. (Tr. 824). The same assessment was again

---

[2] The ALJ discounts Plaintiff's use of a cane to assist him while walking, because Plaintiff initially requested the cane in May of 2012. (Tr. 14, 372). While this is an accurate statement, Plaintiff's physicians still provided him with the ambulatory device after the initial request (Tr. 372), and later prescribed a different type of cane in October of 2012 to alleviate pain in Plaintiff's hands. (Tr. 558).

[3] Bladder incontinence is associated with degenerative disc disease and "neurological abnormalities." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(K)(4).

made on May 21, 2013. (Tr. 816-17). Additionally, Plaintiff's treatment records show that he has a history of falls and uses an ambulatory aid. (Tr. 816-17). On May 24, 2013, Plaintiff's doctor reported that his lower back pain is triggered by "movement" and that it affects his mobility. (Tr. 804). Additionally, Plaintiff presented with and cane and walked with a "limp" because of "left knee pain." (Tr. 804). On examination, ankle plantar flexion and toe extension were both difficult due to knee pain; Plaintiff's straight leg raise test was positive due to back pain; and lumbar flexion and extension produced lower back pain. (Tr. 804). Plaintiff was again flagged as a high fall risk on May 24, 2013. (Tr. 809). Again, the evidence does not support a determination of the ability to stand or walk for 6 hours and frequently bend at the waist, which is required to perform the full range of medium work. SSR 83-10, 1983 WL 31251, at *6.

Because Plaintiff's physical conditions — degenerative disc disease of the lumbar spine and cervical spondylosis — are "degenerative in nature," his "most recent [2013] medical records are more indicative of [his] functional limitations" than those obtained in 2012 and relied on by the ALJ. *Powers v. Comm'r of Soc. Sec. Admin.*, 2014 WL 791867, at *10 (M.D. La. Feb. 25, 2014); *see also McGuire v. Little Bill Coal Co.*, 14 F.3d 601, at*3 (6th Cir. 1994) ("because pneumoconiosis is progressive, the ALJ is entitled to give greater weight to the most recent medical opinions, x-rays, and test results than to earlier, conflicting evidence."); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978) ("The degenerative nature of Bastien's condition is an important factor to be weighed."); *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) ("Because Stone's condition was progressively deteriorating, the most recent medical report is the most probative. Earlier medical evaluations . . . do not constitute substantial evidence . . . The determinations of the Social Security medical advisors, made without examining Stone or reviewing either of Dr. Maurer's last two reports, are entitled to even less weight.").

This evidence, which is consistent with Dr. Hau's opinion that Plaintiff could only walk for 4 hours in an 8-hour day, was ignored by the ALJ. The Court is aware that "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *see also Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). However, good cause may not be established by ignoring half of the evidence of record, which also tends to support the treating physician's opinion. Therefore, the Court finds that substantial evidence does not support the ALJ's RFC assessment or the weight given to the medical opinions of record, because the ALJ failed to consider the more recent evidence discussed above and improperly rejected the opinion of Plaintiff's treating physician.

According to Plaintiff, the ALJ's decision also lacks substantial evidence because it wholly accepts and relies on the opinions of Dr. Lee and Dr. Pinilla — that Plaintiff can perform medium work. The Fifth Circuit has noted that "an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

In this case, before rendering their opinions, Dr. Lee and Dr. Pinilla only reviewed the record evidence available as of September of 2012. (Tr. 50). This evidence consisted of treatment records from the Veteran's Clinic between April 12, 2012 and September 9, 2012. (Tr. 205-300). Dr. Lee's and Dr. Pinilla's opinions were rendered without access to the considerable medical findings made after September of 2012, therefore, could not be based upon a "careful evaluation of the medical evidence," as required by the Fifth Circuit. *Villa*, 895 F.2d at 1024. As

a result, Dr. Lee's and Dr. Pinilla's opinions also conflict with the opinions of Plaintiff's treating and examining physicians in 2013, and the record as a whole. Because the ALJ adopted the opinions of Dr. Lee and Dr. Pinilla, which cannot constitute substantial evidence, and those opinions were in conflict with the treating physician, remand is required for this additional reason.

Because the Court has already found that substantial evidence does not support the ALJ's decision, it does not consider Plaintiff's remaining assignments of error or arguments. The Commissioner, however, must consider those remaining assignments of error and arguments on remand.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **VACATED** and Plaintiff's appeal be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Signed in Baton Rouge, Louisiana, on July 20, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**